IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROY FERNANDEZ, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:22-cv-03530 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Deavers |
| BRIAN PETERS, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendants' Motion to Stay. (ECF No. 8). Plaintiffs oppose the request. (ECF No. 10). Defendants request this Court to stay the litigation in this matter pending resolution of an action in California state court which will purportedly be dispositive of a material issue in this case—the issue of Plaintiff Roy Fernandez's ownership interest in SCS Logistics ("SCS-California"). Defendants represent that the state action was filed by the same Plaintiffs herein against the same Defendants as well as SCS-California. Defendants note, however, that two of the three Defendants (Home Appliance Solutions, Inc. ("HAS") and SCS Logistics, LLC ("SCS-Ohio")) to the instant case were dismissed from the California action due to a lack of personal jurisdiction.

For the following reasons, this Court **GRANTS** Defendants' Motion to Stay.

**I.   BACKGROUND**

This matter involves a contract dispute between Plaintiffs Roy Fernandez and Professional Logistic Services, Inc. ("PLS") against Defendants Brian Peters, HAS, and SCS-Ohio. (ECF No. 1). SCS-Ohio is the alleged successor-in-interest to SCS-California, the latter concerning which Peters filed for dissolution "[o]n or about" August 20, 2021. (*Id.* ¶¶ 4, 6).

1

Plaintiffs allege the following. Fernandez and Peters met roughly 20 years ago in California and remained good friends until approximately 2019. (*Id.* ¶ 12). In early 2016, Fernandez and Peters agreed orally to establish a corporation, SCS-California. Fernandez was never identified as an owner of SCS-California in state filings, but the parties allegedly agreed that Fernandez was an "equitable owner" of the corporation and would be added later to state filings. (*Id.* ¶ 15). The parties agreed that, once the corporation was up and running, Peters was to manage the corporation's day-to-day operations as a salaried employee, and Fernandez was to remain involved in major decisions related to the management of the corporation including issues related to employees and business expenses. (*Id.*). The parties soon thereafter entered into another oral agreement to form HAS, a business which would sell discounted, slightly blemished appliances to consumers. (*Id.* ¶ 24). Again, parties agreed to the same roles. And again, Fernandez was not identified as an owner of HAS in state filings but the parties allegedly agreed that he was an "equitable owner" and would be added to the filings later. (*Id.*). The parties opened the first HAS store in Ohio. (*Id.* ¶ 25).

Fernandez and Peters ran the companies from California where they both lived. (*Id.* ¶ 30). They shared SCS-California net profits evenly. (*Id.*). Although HAS was not yet profitable, Peters allegedly "always acknowledged" that Fernandez was a 50% owner of HAS. (*Id.*). In March 2019, Peters allegedly blocked Fernandez from access to the SCS-California American Express credit card account. (*Id.* ¶ 31). When Peters finally allowed Fernandez to access the account, Fernandez discovered numerous, unauthorized expensive personal charges that Peters had made from the account. (*Id.*). Peters then suddenly left California and moved to Ohio; he also stopped sending monthly reports about the companies to Fernandez. (*Id.* ¶¶ 33–34). Fernandez alleges that Peters

made this move at least in part for the purposes of freezing him out of their business partnership and evading California courts' ability to exercise jurisdiction over him. (*Id.* ¶ 34).

On July 8, 2021, Fernandez's attorney sent Peters a letter alleging that Peters breached the parties' partnership agreement. (*Id.* ¶ 35). On September 9, 2021, Peters filed with the California Secretary of State to dissolve the company—without Fernandez's authorization. (*Id.* ¶ 36). On November 9, 2021, Peters formed SCS-Ohio, a corporation Fernandez believes to be the successor-in-interest to SCS-California. (*Id.* ¶ 37).

On November 9, 2021, Plaintiffs filed a lawsuit against Defendants in the Superior Court of the State of California. (ECF No. 10 at 16–32). On September 30, 2022, the same Plaintiffs filed suit against Defendants in this Court. Defendants are materially the same—although SCS-Ohio has been substituted here for SCS-California, Plaintiffs allege that the former is the successor-in-interest to the latter. In both cases, Fernandez's complaint seeks a declaratory judgment that SCS-Ohio is the successor-in-interest to SCS-California, that Fernandez owns half of SCS-Ohio and half of HAS, and that Defendants hold all funds due to Fernandez and/or PLS for their benefit. Fernandez also raises several other causes of action including breach of contract. Notably, Fernandez's theory of liability concerning SCS-Ohio in both cases is that it "is SCS-California's successor-in-interest and is therefore liable for claims against SCS-California including the claims asserted in this Complaint." (ECF No. 1 ¶ 47). Further, Plaintiffs allege "a unity of interest and ownership between Peters, HAS, and SCS-Ohio such that . . . Peters is the alter ego of the HAS and SCS-Ohio." (*Id.* ¶ 94). Both complaints assert the same events giving rise to Fernandez's theories of ownership and liability for both SCS-California/SCS-Ohio and HAS—although Fernandez was never named on the state filings for either entity, the parties allegedly orally agreed upon the issue of his ownership stake in the companies.

On December 9, 2022, Defendants filed their Motion to Stay the Proceedings pending the outcome of the proceedings in California. Defendants represent that the action is set for trial on June 26, 2023 and will be dispositive because the issue therein of Fernandez's ownership in SCS-California "is a necessary element and factual premise of almost all of Plaintiffs' claims in this matter." (ECF No. 8 at 1, 5).

## II.  STANDARD OF REVIEW

Generally, a district court has broad discretion in deciding whether to stay proceedings. *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003). The Supreme Court explained that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976).

The doctrine of abstention permits a district court to "decline to exercise or postpone the exercise of its jurisdiction[.]" *Id.* at 813 (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). The Supreme Court has confined the use of the abstention doctrine to three categorical areas. First, "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River*, 424 U.S. at 815. Second, in "cases where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* Third, in "cases where, absent bad faith, harassment or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, or state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films or collection of state taxes." *Id.* at 816.

As the Sixth Circuit articulated, however, the Supreme Court in *Colorado River* "declared that even where it is inappropriate for a federal court to 'abstain' from exercising its jurisdiction, exceptional circumstances may still require the court to 'defer' to a state court in which parallel litigation is pending." *Phillip Diniaco & Sons, Inc. v. Max J. Colvin & Sons Trucking, Inc.*, 865 F.2d 1269, 1988 WL 137336, at *1 (6th Cir. 1988) (citing *Colorado River*, 424 U.S. at 800). In such "exceptional circumstances," the *Colorado River* doctrine permits a federal court to stay or dismiss a federal action in favor of a concurrent action in state court. *Edge Investment, LLC v. D.C.*, 927 F.3d 549, 550 (D.C. Cir. 2019).

Analyzing whether *Colorado River* applies is a two-step process. *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021). The first inquiry concerns whether there exist "parallel federal and state proceedings involving the same subject matter." *Phillip Diniaco & Sons, Inc.*, 1988 WL 137336, at *2 (citing *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 31 (6th Cir. 1984)). The second inquiry involves a balancing of the factors articulated in *Colorado River* to determine whether a case "represents the kind of exceptional circumstances required to defer to state court proceedings." *Edge Investment, LLC*, 927 F.3d at 553; *Phillip Diniaco & Sons, Inc.*, 1988 WL 137336, at *2. The decision to defer, however, "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

### III. LAW AND ANALYSIS

Defendants' Motion argues that most of Plaintiffs' claims are expressly premised upon Fernandez owning an interest in SCS-California, a non-party to this case. This is a question that is central to the California Action. In order to determine the ownership of SCS-California,

5

Defendants argue, that entity would need to be joined in this case which would result in this Court losing diversity jurisdiction over this matter. Moreover, they argue, the issue of Plaintiffs' ownership over SCS-California will have collateral estoppel effect and be thereby determinative of most of the claims in this case. Further, Defendants argue, the balancing of the *Colorado River* factors justify the issuance of a stay. Under the eight factors of *Colorado River*, Defendants argue the following: (1) there is no res or property at issue, making the first factor neutral; (2) this Court would lose jurisdiction due to a lack of complete diversity if SCS-California were joined as necessary to litigate fairly its ownership; (3) the complaints in both actions are virtually identical; (4) & (5) the parties have engaged in significant discovery over the year the California action has been pending, with trial set in June 2023; (6) there are no federal claims in the Complaint; (7) the California forum is adequate given that most of the claims require the determination of the claims to ownership in SCS-California; and (8) there would be no concurrent jurisdiction if SCS-California were joined.

Plaintiffs argue that the two actions are not parallel because the proceedings do not both involve the same set of defendants—especially given the dismissal of HAS and SCS-Ohio from the California action. Plaintiffs also contend that the California action is unlikely to be resolved by the June 2023 trial date given Defendants' alleged obstruction of the discovery process and the backlog of the courts. Further, Plaintiffs argue, the instant action is not parallel to the California action because a decision there would not be determinative of the alleged agreement concerning HAS. For their part, Plaintiffs argue that the balancing of the *Colorado River* factors weigh against abstention: (1) they agree that there is no res or property at issue; (2) the federal forum is the most convenient given that SCS-Ohio, HAS, and Defendant Peters are based in Ohio; (3) the California action does not involve HAS or SCS-Ohio, the litigation is still in the discovery phase, and whether

SCS-Ohio and SCS-California are related is an unsettled question; (4) the California action was first filed, but the instant lawsuit became necessary after Defendants objected to California jurisdiction; (5) trial in the California action is likely to be continued past the June 2023 date; (6) there is complete jurisdiction, even if no live federal question; (7) the California court cannot protect Plaintiffs' rights because SCS-Ohio and HAS were dismissed from that action; and (8) while both courts have concurrent jurisdiction over the claims against Peters, he is the only Defendant common to the actions.

The key question in determining whether *Colorado River* abstention is applicable is whether there are parallel proceedings in state court. *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (citing *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984)). As interpreted by the Sixth Circuit, *Colorado River* and its progeny have established that the district court must then consider such factors as the following in deciding whether to defer to the concurrent jurisdiction of a state court:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; [] (4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal . . . (6) the adequacy of the state court action to protect the federal plaintiff's rights . . . (7) the relative progress of the state and federal proceedings . . . and (8) the presence or absence of concurrent jurisdiction . . . .

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998).

*Colorado River* abstention, however, "is temporary because all the reasons for it dissipate once the state court proceedings have run their course." *Bates*, 122 F. App'x at 808. As such, "a stay is the best way to effectuate *Colorado River* abstention." *Id.* at 809.

Here, the *Colorado River* factors favor a stay. The fact that Plaintiffs filed glaringly similar complaints in both the California action and the instant lawsuit support this Court's conclusion that the two case involve substantially the same subject matter. It is further significant that the

7

California action has been pending for a year and has trial scheduled to begin in only five months while the federal matter is still in the initial pleading stage. *See Romine*, 160 F.3d at 341–42.

Given Plaintiffs' allegations that SCS-Ohio is the successor-in-interest, this Court must determine Fernandez's ownership status via-a-vis SCS-California before resolving this matter. The facts thus indicate that SCS-California is a necessary party in this action; it is, however, absent from this matter. Although SCS-Ohio and HAS were dismissed from the California action, the remaining live issues have significant impact on the adjudication of claims against the other parties. In fact, Fernandez's claims to ownership for both SCS-Ohio and HAS rest on similar allegations: that Fernandez and Peters orally agreed that Fernandez was an equitable owner of each entity and that Fernandez would be added at a later date to state filings. Plaintiffs even allege that "there exists . . . a unity of interest and ownership between Peters, HAS, and SCS-Ohio such that any . . . individuality and separateness between [Defendants] has ceased . . . . " (ECF No. 1 ¶ 94).

Whether Plaintiffs are entitled to their requested relief from this Court—including a declaration that Fernandez owns half of SCS-Ohio as the successor-in-interest to SCS-California and half of HAS—turns in large part upon the issue of ownership over SCS-California. This is an issue which the California action is poised to address in the upcoming trial. There are, after all, no federal issues in this case. Plaintiffs at least impliedly suggest that this Court could, in the alternative, adjudicate solely the claims against HAS. This, however, would result in precisely the piecemeal litigation that this Court intends to avoid. Given this rationale, this Court will stay the matter. *Bates*, 122 F. App'x at 809.

## IV. CONCLUSION

Having found that *Colorado River* abstention is appropriate, this Court **GRANTS** Defendants' Motion to Stay. (ECF No. 8). This matter will be stayed pending resolution of the parallel proceeding before the Placer County Superior Court of the State of California.

**IT IS SO ORDERED.**

                                               **ALGENON L. MARBLEY**
                                               **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: February 28, 2023**